**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| CHEHARDY, SHERMAN, WILLIAMS RECILE & HAYES, LLP, and THE KING FIRM<br><br>*Plaintiffs*<br><br>v.<br><br>RECOVERY LEGAL GROUP, RAFAEL E. RIVERA-SANCHEZ, LAW OFFICE OF RAFAEL E. RIVERA-SANCHEZ, MAYTTE TEXIDOR-LOPEZ, TEXIDOR-LOPEZ L.L.C., TEXLO CONSULTING, MARIA ALMODOVAR, and MARICARMEN ALMODOVAR-DIAZ LAW OFFICE<br><br>*Defendants* | ) | CASE NO. 24-cv-01141<br><br>**JURY TRIAL DEMANDED**<br><br>RE: BREACH OF CONTRACT, TORTS |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** the plaintiffs, through undersigned counsel, who very respectfully state, allege and pray as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the present civil action pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and arises between citizens of different states and/or between citizens or subjects of a foreign state or nation.

2. Venue in this Court is proper under 28 U.S.C. §1391(b) because the events and omissions giving rise to the Complaint occurred within the District of Puerto Rico and all defendants are citizens of Puerto Rico.

## II. THE PARTIES

3. Plaintiff, Chehardy, Sherman, Williams, Recile & Hayes, L.L.P. (hereinafter referred to as "CSW") is a limited liability partnership organized under the laws of the State of Louisiana, whose principal place of business is located at 1 Galleria Blvd., Suite 1100, Metairie, Louisiana, 70001. CSW is domiciled in the State of Louisiana, and all its partners are domiciled in and citizens of the State of Louisiana. Specifically, its partners include: Lawrence E. Chehardy, David R. Sherman, James M. Williams, George B. Recile, Steven E. Hayes, Stephen D. Marx, George A. Mueller III, Conrad Meyer, Patrick K. Reso, Matthew A. Sherman, Jennifer A. Lee, Inemesit U. O'Boyle, Daniel E. Buras, Jr., J. Garrison Jordan, Patrick R. Follette, Adam M. Stumpf, Fred L. Herman, R. Christopher Martin, Walter R. Woodruff, Stephen E. Conroy, Elsbet C. Smith, Jacob D. Young, Rory V. Bellina, Edwin T. Murray, Courtney P. Newton and Tiffany Delery Davis. All members of the partnership of CSW identified hereinabove are domiciled in and citizens of the State of Louisiana.

4. Plaintiff, The King Firm, is a limited liability company organized under the laws of the State of Louisiana, whose principal place of business is located at 2912 Canal Street, New Orleans, Louisiana 70119. The sole members of The King Firm are Jason Giles and Brian King, who are both domiciled in and citizens of the State of Louisiana.

CSW and The King Firm are collectively hereinafter referred to as "Plaintiffs".

5. Defendant, Recovery Legal Group, is a limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Puerto Rico located at 35 Juan C. Borbon, Suite 67-334, Guaynabo, Puerto Rico 00969-5375. Upon information and belief, the members of Recovery Legal Group are Rafael E. Rivera-Sanchez, Maytte Texidor-Lopez and Maria Almodovar, all of which are domiciled in and citizens of the Commonwealth of Puerto Rico.

6. Defendant, Rafael E. Rivera-Sanchez, is a person of the full age of majority and, upon information and belief, is domiciled at A18 Las Veredas Real, Bayamon, Puerto Rico 00961.

7. Defendant, Law Office of Rafael E. Rivera-Sanchez, is upon information and belief, a law office organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business located at P.O. Box 191884, San Juan, Puerto Rico 00919-1884. Upon information and belief, the member of the Law Office of Rafael E. Rivera-Sanchez is Rafael E. Rivera-Sanchez, who is domiciled in and a citizen of the Commonwealth of Puerto Rico.

8. Defendant, Maytte Texidor-Lopez, is a person of the full age of majority and, upon information and belief, domiciled at Cond. Alturas De San Juan, San Juan, Puerto Rico 00926.

9. Defendant, Texidor-Lopez, L.L.C., a limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business located at 192 Calle A, Urb. El Veternao, San Juan, Puerto Rico 00926. Upon information and belief, the member of Texidor-Lopez, LLC is Maytte Texidor-Lopez, who is domiciled in and a citizen of the Commonwealth of Puerto Rico.

10. Defendant, Texlo Consulting, upon information and belief, is a law office organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business located at 501 Camino Los Pizarro, #251, San Juan, Puerto Rico 00926. Upon information and belief, the member of Texlo Consulting is Maytte Texidor-Lopez, who is domiciled in and a citizen of the Commonwealth of Puerto Rico.

11. Defendant, Maria Almodovar, is a person of the full age of majority and, upon information and belief, domiciled at 530 Ponce De Leon Ave., San Juan, Puerto Rico 00901.

12. Defendant, Maricarmen Almodovar Diaz Law Office, upon information and belief, is a law office organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business located at 530 Ponce De Leon Avenue, San Juan, Puerto Rico 00901. Upon information and belief, the member of Maricarmen Almodovar Diaz Law Office is Maria Almodovar, who is domiciled in and a citizen of the Commonwealth of Puerto Rico.

Defendants, Recovery Legal Group, Rafael E. Rivera-Sanchez, Law Office of Rafael E. Rivera-Sanchez, Maytte Texidor-Lopez, Texidor-Lopez, L.L.C., Texlo Consulting, Maria Almodovar, and Maricarmen Almodovar Diaz Law Office, are hereinafter collectively referred to as "Defendants." Defendants, collectively, are joint and solidary obligors for the debts owed to Plaintiffs as set forth in this Complaint.

## III. FACTUAL BACKGROUND

13. On or about September 19, 2017, Hurricane Maria made landfall on the island of Puerto Rico, causing significant and catastrophic damage.

14. After Hurricane Maria, CSW, The King Firm, and Recovery Legal Group formed and established a Joint Venture Agreement for certain hurricane related claims (hereinafter

referred to as the "Claims"). The Claims included, but were not limited to, hurricane related claims with insurance companies associated with the Vega Alta Municipality, an Airport Hangar, and a Condominium, all of which were devastated by Hurricane Maria.

15. The Joint Venture Agreement, attached hereto as Exhibit 1, was entered into towards the end of 2017. The provisions of the Joint Venture Agreement set forth the following:

> **Parties**: This is a joint venture agreement between The King Firm, LLC, a Louisiana law firm, Chehardy, Sherman Williams, et. al., LLP, a Louisiana law firm, and Recovery Legal Group, PSC, a Puerto Rico Law Firm.
>
> **Object of this proposal**: The object of this proposal is for The King Firm, LLC, and Chehardy, Sherman, Williams, et. al to provide resources, knowledge and experience handling first party insurance claims in the aftermath of hurricanes, to all past, current, and future clients of Recovery Legal Group, PSC. All parties to this joint venture desire to share in the attorney fees generated by the representation of Recovery Legal Group, PSC's past, current, and future clients in Hurricane litigation. In exchange for The King Firm, LLC and Chehardy, Sherman, Williams' commitment to provide their knowledge, experience, and resources to Recovery Legal Group, PSC clients, Recovery Legal Group, PSC will work exclusively with The King firm and Chehardy, Sherman, Williams to represent all past, current, and future clients of Recovery Legal Group, PSC in need of representation in connection of Hurricane losses.
>
> **Representation of Clients**: All clients will be represented by Recovery Legal Group, PSC and sign a retainer agreement with Recovery Legal Group, PSC. All clients will be informed of, and agree to, any fee split between lawyers and law firms. At all times, The King Firm, LLC, Chehardy Sherman Williams, and Recovery Legal Group, PSC will observe and comply with all Rules of Professional Conduct and rules of court relevant to any representation. The parties recognize that the lawyers of The King Firm, LLC and Chehardy Sherman Williams have experience and knowledge dealing with claims arising from storm damage. Additionally, the parties recognize that the King Firm, LLC and

Chehardy Sherman Williams will pay all costs associated or incurred in the prosecution of the claims. The parties recognize that the lawyers of Recovery Legal Group, PSC, have knowledge and experience with Puerto Rico law in general, and are licensed in Puerto Rico, and are authorized to litigate on behalf of clients in state and federal court in Puerto Rico. The parties agree that unless and until The King Firm and/or Chehardy Sherman Williams retains a lawyer licensed in Puerto Rico by agreement of all parties hererto, Recovery Legal Group, PSC will be responsible for all court filings and appearances, as required by Puerto Rico law, except as allowed by *pro hac vice* rules and Puerto Rico Law. The parties agree that The King Firm, LLC and Chehardy Sherman Williams shall provide legal support assistance and staffing to the extent necessary to represent clients in these matters, including but not limited to the retaining of experts, preparation and processing of claims, and consultation with the lawyers of Recovery Legal Group, PSC, regarding litigation and litigation strategy.

**Fee arrangement between law firms**: The parties agree that for all matters encompassed in this agreement, The King Firm, LLC, and Chehardy Sherman Williams shall receive 65% of all attorney fees collected, and Recovery Legal Group, PSC, shall receive 35% of all attorney fees collected. These advances shall be deposited in an escrow account for this purpose only.

**Costs for financing of litigation**: The parties agree that for all matters encompassed in this agreement, The King Firm, LLC and Chehardy Sherman Williams shall advance funds necessary for court costs needed to prosecute these cases in litigation.

16. On December 30, 2017, Defendants sent an email to Plaintiffs with revisions to the Joint Venture Agreement. *See* Exhibit 2. The parties ultimately agreed to this version of the Joint Venture Agreement and began working on the Claims.

17. Thereafter, Plaintiffs performed extensive work, along with the retained experts, pursuing the Claims for Vega Alta municipality, the Airport Hangar, and the Condominium. Such work included, but was not limited to, drafting and sending correspondence, drafting a

lawsuit against the insurance companies, traveling to and from Puerto Rico, meeting with members of the municipality and insurance companies, providing expert estimates for the damages to the municipality, Airport Hangar and Condominium, and providing advice to Defendants who were not familiar with hurricane claims or similar processes.

18. Plaintiffs and Defendants continued to work diligently on the Claims for several years following entering into the Joint Venture Agreement on or about December 30, 2017.

19. On or about May 22, 2019, Defendants and Plaintiffs held a teleconference wherein Defendants voiced their desire to amend the terms of the Joint Venture Agreement. *See* Exhibit 3.

20. On May 28, 2019, Defendants sent correspondence to Plaintiffs outlining their request to revise the terms of the Joint Venture Agreement. Specifically, Defendants requested that Plaintiffs agree that Plaintiffs would recover 55% of the attorney fee for all Claims (previously, it was 65%), and Defendants would recover 45% of the attorney fee for all Claims (previously, it was 35%). *See* Exhibit 3.

21. Unbeknownst to Plaintiffs, Defendants had secretly been on the verge of resolving some of the Claims for millions of dollars when they induced Plaintiffs into agreeing to the revised terms of the Joint Venture Agreement.

22. Shortly after Defendants fraudulently induced Plaintiffs into agreeing to the new terms in the Joint Venture Agreement, Defendants resolved some of the Claims for several million dollars.

23. Plaintiffs, who became aware of the settlement only after Defendants had agreed to the terms of the settlement with the insurance companies, began asking Defendants about the fees and costs that were owed to Plaintiffs as set forth in the Joint Venture Agreement.

24. Defendants were evasive to Plaintiffs' inquiries, consistently stating that the funds had not come in yet.

25. Plaintiffs continued to press Defendants regarding the fees and costs that were owed to Plaintiffs, but to no avail.

26. On March 25, 2020, Defendants sent a letter to Plaintiffs wherein they sought to officially "terminate" the Joint Venture Agreement entered into between the parties. *See* Exhibit 4.

27. In the March 25, 2020 letter, Defendants acknowledged the existence of the Joint Venture Agreement, acknowledged that Plaintiffs had done work pursuant to the Joint Venture Agreement, and sought to terminate the Joint Venture Agreement. *See* Exhibit 4.

28. Further, Defendants sought to pay Plaintiffs $50,000.00 for the work completed for the Claims. Again, the Claims settled for several million dollars, making Plaintiffs' portion far more significant than $50,000.00. Plaintiffs' costs, and the fees charged by the experts for the work they completed, also exceeded the $50,000.00 offered by Defendants.

29. Plaintiffs declined Defendants' offer to resolve the issues related to the fees and costs owed by Defendants under the Joint Venture Agreement.

30. Plaintiffs attempted for the last several years to resolve the outstanding issues related to Defendants' breach of the Joint Venture Agreement and failure to pay Plaintiffs the fees and costs owed pursuant to the Joint Venture Agreement, to no avail, thus necessitating this Complaint.

31. Upon information and belief, Defendants formed Recovery Legal Group and attempted to dissolve the entity following their unilateral termination of the Joint Venture Agreement. Thus, all named Defendants had a role in the fraudulent business practices and breach of

the Joint Venture Agreement, and thus all Defendants are liable to Plaintiffs for their acts and/or omissions as outlined in this Complaint.

## IV. FIRST CAUSE OF ACTION: BREACH OF CONTRACT

32. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

33. As set forth above, Plaintiffs and Defendants entered into a Joint Venture Agreement in December 2017.

34. Defendants sought to revise the terms of the Joint Venture Agreement via e-mail on May 28, 2019.

35. Plaintiffs originally agreed to the revised terms of the Joint Venture Agreement in May 2019 without knowing Defendants were fraudulently inducing them to reduce their attorney fee distribution while they were secretly on the cusp of resolving some of the Claims for several million dollars.

36. Defendants, without informing Plaintiffs, resolved some of the Claims for several million dollars in 2019, entitled Plaintiffs to their portion of the attorneys' fees as set forth in the Joint Venture Agreement, as well as reimbursement for the costs expended in prosecuting the Claims.

37. Despite several inquiries from Plaintiffs regarding their fees and costs over the next several months, Defendants failed to pay Plaintiffs what was due and owed to them under the unambiguous terms of the Joint Venture Agreement.

38. On March 25, 2020, Defendants unilaterally terminated the Joint Venture Agreement without cause and without the consent of the Plaintiffs.

39. To date, Defendants have failed to pay Plaintiffs what was due and owed to Plaintiffs under the terms of the Joint Venture Agreement, thus breaching the Joint Venture Agreement.

40. Based on the foregoing, Defendants are liable to Plaintiffs for compensatory damages and actual damages, specific performance, plus costs, expenses, interest, and attorney's fees in litigating this matter.

## V. SECOND CAUSE OF ACTION: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

41. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

42. Plaintiffs had a justified and reasonable expectation that Defendants would, consistent with the terms of the Joint Venture Agreement, provide Plaintiffs with their portion of the attorneys' fees for the Claims.

43. Plaintiffs also had a justified and reasonable expectation that Defendants would pay the experts their fees associated with the work completed in pursuit of the Claims and as outlined in the Joint Venture Agreement.

44. Defendants' actions in failing to pay Plaintiffs their portion of the attorneys' fees as outlined in the Joint Venture Agreement, and to reimburse the experts retained to conduct work in pursuit of the Claims, was contrary to the agreed and common purpose of the parties and was contrary to the reasonable and justified expectations of Plaintiffs.

45. Defendants are liable to Plaintiffs for the entire amount of their portion of the attorneys' fees for the Claims and related expenses, including, but not limited to, expert fees and expenses.

46. Based on the foregoing, Defendants are liable to Plaintiffs for compensatory damages and actual damages, plus costs, expenses, interest, and attorneys' fees in litigating this matter.

## VI. THIRD CAUSE OF ACTION: FRAUD AND MISREPRESENTATION

47. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

48. When Defendants held the May 22, 2019 teleconference wherein they demanded the attorney fee distribution be revised under the Joint Venture Agreement, they were aware that the Claims were close to resolution and settlement.

49. Thereafter, Defendants sent correspondence on May 28, 2019, confirming the teleconference and revising the attorney fee distribution under the Joint Venture Agreement.

50. Defendants purposefully and intentionally withheld from Plaintiffs that they were close to resolving the Claims when they induced Plaintiffs into revising the terms of the Joint Venture Agreement.

51. Defendants fraudulently misrepresented the posture of the case to Plaintiffs for the sole purpose of altering the original terms of the Joint Venture Agreement, and so that Defendants could retain additional unwarranted profits from the settlement of the Claims.

52. Defendants' fraud and misrepresentation to Plaintiffs has caused Plaintiffs financial damages.

53. Based on the foregoing, Defendants are liable to Plaintiffs for compensatory damages, actual damages, punitive damages, costs, expenses, attorneys' fees and interest.

## VII. FOURTH CAUSE OF ACTION: TORTIOUS CONVERSION

54. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

55. Defendants collected several million dollars as a result of the settlement of the Claims.

56. As set forth in the Joint Venture Agreement, Plaintiffs are entitled to their portion of the attorneys' fees and costs associated with the proceeds received by Defendants as a result of the settlement of the Claims.

57. Knowing that the funds owed to Plaintiffs from the settlement proceeds from the Claims was the property of Plaintiffs, as set forth in the Joint Venture Agreement, Defendants maliciously, wrongfully and illegally exercised and assumed authority over the funds rightfully owned by Plaintiffs.

58. Defendants exercised complete dominion and control over Plaintiffs' funds and permanently or indefinitely deprived Plaintiffs of the right to possess, use and/or enjoy those funds.

59. Based on the foregoing, Defendants are liable to Plaintiffs for compensatory damages, actual damages, punitive damages, costs, expenses, attorneys' fees and interest.

## VIII. FIFTH CAUSE OF ACTION: QUANTUM MERUIT

60. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

61. Plaintiffs are entitled to recover from Defendants under the theory of *quantum meruit.*

62. Plaintiffs made capital expenditures and also assisted in the prosecution of the Claims by providing legal services related thereto, as well as retaining experts who rendered services in the prosecution of the Claims and incurred significant fees and costs in doing so.

63. Plaintiffs provided valuable legal services and furnished material financial expenditures to Defendants in furtherance of the Claims.

64. Defendants accepted the services and material financial support for the work completed in prosecution of the Claims.

65. Defendants were aware that Plaintiffs were to be compensated for Plaintiffs' contributions in prosecution of the Claims, as set forth clearly in the Joint Venture Agreement, and the parties had agreed that Plaintiffs would be reimbursed for both the financial contributions and for the legal services rendered by Plaintiffs.

66. Plaintiffs are entitled to recover the reasonable value of both its financial contributions and the legal services provided in prosecution of the Claims, as set forth in the Joint Venture Agreement.

67. Defendants have collected several million dollars from the Claims and have refused to compensate Plaintiffs for the value of Plaintiffs' legal services and/or Plaintiffs' financial contributions.

68. Defendants are liable to Plaintiffs for the value of all financial contributions and legal services rendered regarding the settlement from the Claims.

69. Based on the foregoing, Defendants are liable to Plaintiffs for compensatory damages and actual damages, plus costs, expenses, interest, and attorneys' fees in litigating this matter.

## IX. SIXTH CAUSE OF ACTION: UNJUST ENRICHMENT

70. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

71. In the alternative, if there is no other remedy provided by law, Defendants were unjustly enriched to the impoverishment of Plaintiffs.

72. Defendants were enriched by unlawfully retaining the value of Plaintiffs' portion of the attorneys' fees for the Claims.

73. Defendants were also enriched unlawfully by retaining the costs and expenses due and owed to Plaintiffs for their work in pursuit of the Claims, including, but not limited to, the costs and fees associated with experts.

74. Plaintiffs were impoverished by Defendants' acts of retaining the funds which were rightfully owed to Plaintiffs from the Claims.

75. The unlawful enrichment of Defendants was directly related to the impoverishment of Plaintiffs.

76. Defendants had no justification in exercising dominion and control over funds which were rightfully the property of Plaintiffs.

77. Defendants have been unjustly enriched at the expense of Plaintiffs, and Defendants continue to enjoy the fruits of the unjust enrichment to the detriment of Plaintiffs.

78. Based on the foregoing, Defendants are liable to Plaintiffs for compensatory damages, actual damages, punitive damages, costs, expenses, attorneys' fees and interest.

## X. JURY DEMAND

79. Plaintiffs demand a jury trial on all issues.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants and order each of the Defendants to: (i) pay Plaintiffs the amounts owed under the Joint Venture Agreement for the settlement proceeds received related to the Claims; (ii) pay Plaintiffs the costs and expenses associated with their efforts in prosecuting the Claims; (iii) pay the experts their costs and expenses associated with their assistance in prosecuting the Claims; and (iv) granting any other relief at law available to Plaintiffs.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of March, 2024.

**I HERBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

**STEFFENS GUZMÁN LAW**
105 Avenida Ortegón, Suite 502
Guaynabo, P.R. 00966
Tel. (787) 599-7538

*s/ Carlos A. Steffens Guzmán, Esq.*
c.steffens@steffenslawpr.com
U.S.D.C.P.R. No. 210807